IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STACY AMOROSO,

               Plaintiff,

    v.

BUCKS COUNTY COURT OF COMMON
PLEAS, et al.,

               Defendants.

CIVIL ACTION
NO. 13-0689

## OPINION

**Slomsky, J.**                                                         **March 27, 2014**

### I.  INTRODUCTION

From 2004 to 2011, Plaintiff Stacy Amoroso ("Plaintiff") was an employee of the Bucks County Court of Common Pleas ("BCCP") in Bucks County, Pennsylvania.  While employed there, her supervisors were Frank Filipovits ("Defendant Filipovits") and Laura LoBianco ("Defendant LoBianco").  From April 2010 to the fall of 2010, Plaintiff took an approved leave of absence from her job under the Family Medical Leave Act ("FMLA").  She returned to work in the fall of 2010 and was terminated in May 2011.

On February 7, 2013, Plaintiff instituted this action against Defendants BCCP, the County of Bucks ("Bucks County"), and individual Defendants Filipovits and LoBianco.  (Doc. No. 1.)  On August 1, 2013, Plaintiff filed a Second Amended Complaint ("SAC").  (Doc. No. 40.)  In her SAC, Plaintiff alleges eight claims in six counts.  She alleges two separate claims in both Counts I and II.  In Count I, Plaintiff alleges interference and retaliation under the FMLA against individual Defendants Filipovits and LoBianco, and in Count II she alleges interference and

retaliation under the FMLA against Defendants BCCP and Bucks County.[1]  In Count III, she

alleges a violation of her rights under the Rehabilitation Act against Defendants BCCP and

Bucks County; in Count IV, she alleges a violation of her equal protection rights against

Defendants Filipovits and LoBianco; in Count V, she alleges a violation of her rights under the

Pennsylvania Human Relations Act ("PHRA") against Defendants Filipovits and LoBianco; and

finally, in Count VI, she alleges intentional infliction of emotional distress by Defendants

Filipovits and LoBianco.[2]

Defendants BCCP and Bucks County filed separate Motions to Dismiss.  (Doc. Nos. 44,

49.)  Individual Defendants Filipovits and LoBianco filed a joint Motion to Dismiss.  (Doc. No.

48.)  These Motions are presently before the Court.  For reasons that follow, the Motions to

Dismiss will be granted in part and denied in part.[3]

## II.   BACKGROUND

The following facts are alleged in the SAC.  (Doc. No. 40.)  In March 2004, Plaintiff was

hired by the Bucks County Court of Common Pleas ("BCCP").  (Doc. No. 40 at ¶¶ 17-18.)

---

[1] The FMLA provides that "it shall be unlawful for any employer to interfere with, restrain, or
deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29
U.S.C. § 2615(a)(1).  Under the FMLA, a plaintiff may bring a claim for interference with his
right to take FMLA leave, and/or for retaliation after taking such leave.  These are two separate
claims.  Here, Plaintiff asserts both claims against each of the four Defendants.

[2] In her Response to Defendant BCCP's Motion to Dismiss, Plaintiff contends that the SAC can
be construed to include a disparate treatment discrimination claim, a harassment claim, and a
failure to accommodate claim.  (Doc. No. 54 at 5-6.)  These claims are not specifically alleged
in the SAC, and the Court will not address them as separate claims.

[3] In deciding the Motions to Dismiss, the Court has considered Defendant BCCP's Motion to
Dismiss (Doc. No. 44), Plaintiff's Response (Doc. No. 54), BCCP's Reply (Doc. No. 55),
Defendant Bucks County's Motion to Dismiss (Doc. No. 49), Plaintiff's Response (Doc. No.
56), individual Defendants Filipovits and LoBianco's Motion to Dismiss (Doc. No. 48),
Plaintiff's Response (Doc. No. 57), and Defendants Filipovits and LoBianco's Reply (Doc. No.
58).

Plaintiff suffers from Attention Deficit Hyperactivity Disorder ("ADHD"), and advised her employers of this disorder in 2010.  (Id. at ¶¶ 15-16.)

Between March 2004 and November 2005, Plaintiff worked as a clerk for BCCP.  (Id. at ¶ 18.)  In November 2005, she was promoted to Domestic Hearing Officer in the Domestic Relations Division.  (Id.)  She worked as a Domestic Hearing Officer from November 2005 to May 20, 2011.  (Id. at ¶¶ 18-19.)  Defendant Filipovits also worked as a Domestic Hearing Officer during this time.  (Id. at ¶ 20.)  Defendant Laura LoBianco served as Director of the Bucks County Domestic Relations Division.  (Id. at ¶ 9.)

In late 2007, Defendant Filipovits smacked Plaintiff on her buttocks.  (Id.)  Thereafter, Plaintiff was called into Defendant LoBianco's office and told that she was "gossiping and disrupting the office."  (Id. at ¶ 29.)  Defendant LoBianco forced Plaintiff to write a letter regarding the incident.  (Id. at ¶ 27.)  Defendant LoBianco was not satisfied with the letter, so she forced Plaintiff to write an additional letter stating that the incident had been resolved. (Id. at ¶ 31.)  As a result of the incident, Defendant Filipovits did not receive a promotion.  (Id. at ¶ 32.)  Plaintiff alleges that Defendant Filipovits held a grudge against her for the sexual misconduct, and Defendant LoBianco held a grudge against her for the failed promotion of Defendant Filipovits.  (Id. at ¶¶ 35-36.)

Around January 2010, Plaintiff was approved for intermittent FMLA leave as a result of a "serious medical condition."  (Id. at ¶ 37.)  In April 2010, Plaintiff took full-time FMLA leave. (Id. at ¶ 38.)  An employee of Defendant Bucks County's Human Resources Department told Plaintiff that "they were trying to build a paper trail," and that she should "take a break."  (Id. at ¶ 39.)  Before starting her FMLA leave, Plaintiff was told that she had to re-train for her job.  (Id.

at ¶ 40.)  She was then subjected to grammar training and other re-training in positions she had previously held as a clerk.  (Id. at ¶ 41.)

On September 16, 2010, Plaintiff returned to work from FMLA leave.  (Id. at ¶ 42.)  Prior to her return, Plaintiff requested a reasonable accommodation for her "depression and anxiety" by being reassigned to a different supervisor.  (Id. at ¶ 42.)  This request was denied.  (Id.)  When she returned to work, Plaintiff was scrutinized regularly and unnecessarily, and subjected to "unwarranted criticism and discipline."  (Id. at ¶ 43.)  She was not given the opportunity to settle back into her position, and Defendants piled work on her almost immediately.  (Id. at ¶ 47.)

Before her actual return and continuing through her termination, Defendants engaged in a pattern of antagonism against Plaintiff.  (Id. at ¶ 49.)  First, Defendants created an Action Plan to "create a bogus paper trail to justify terminating Plaintiff."  (Id. at ¶ 60.)  Plaintiff's supervisor told other employees that someone should be present at any meeting with Plaintiff.  (Id. at ¶ 61.) Plaintiff states that other hearing officers with Action Plans were not treated this way. (Id. at ¶ 63.)  Employees were also told to document any mistakes that Plaintiff made.  (Id. at ¶ 66.)  Plaintiff had to complete a training packet for new officers as part of her Action Plan, while other officers were not required to do so.  (Id. at ¶ 69.)  Employees then reviewed Plaintiff's answers in the training packet with a "fine-toothed comb."  (Id. at ¶ 70.)  In December 2010, Defendant LoBianco told other employees not to speak to Plaintiff.  (Id. at ¶ 74.)

In November 2010, Plaintiff was assigned a new caseload "in an effort to set her up for 'bogus' performance evaluations that would justify her termination."  (Id. at ¶ 73.)  From 2010 to 2011, Plaintiff received "bogus evaluations" drafted by Defendants LoBianco and Filipovits, as well as other employees.  (Id. at ¶¶ 76-77.)  These evaluations culminated in Plaintiff's

termination in May 2011.  (Id. at ¶ 78.)  When Plaintiff was terminated, Defendant LoBianco stated "something to the effect that Plaintiff was 'an embarrassment to the county.'"  (Id. at ¶ 79.)

On February 7, 2013, Plaintiff commenced this action against Defendants BCCP and Bucks County, and against individual Defendants Filipovits and LoBianco.  (Doc. No. 1.) Defendants BCCP and Bucks County have filed separate Motions to Dismiss the SAC.  (Doc. No. 44, 49.)  Individual Defendants Filipovits and LoBianco have filed a joint Motion to Dismiss the SAC.  (Doc. No. 48.)  On July 2, 2013, a hearing on the Motions was held.  The Motions to Dismiss are now ripe for a decision by this Court.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."   Second, the court should identify

> allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   ANALYSIS

As noted above, Plaintiff is pursuing eight claims in six counts against Defendants BCCP and Bucks County, and against individual Defendants Filipovits and LoBianco. Defendants seek their dismissal. For reasons that follow, the Court agrees that certain claims should be dismissed. Plaintiff's claims for interference under the FMLA and violation of the Rehabilitation Act against each of the four Defendants will be dismissed, along with her claims for violation of her equal protection rights and intentional infliction of emotional distress by individual Defendants Filipovits and LoBianco. Plaintiff's claims for FMLA retaliation against each of the four

6

Defendants will proceed.  Her claim for retaliation under the PHRA against individual Defendants Filipovits and LoBianco will also proceed.

### A.  Plaintif's Claims Against BBCP

In the Complaint, Plaintiff alleges the following claims against BCCP: (1) interference under the FMLA (Count II); (2) retaliation under the FMLA (Count II); and (2) violation of her rights under the Rehabilitation Act (Count III).  BCCP seeks dismissal of the claims for interference under the FMLA and violation of the Rehabilitation Act.  BCCP does not address Plaintiff's claim for retaliation under the FMLA, and therefore that claim will not be dismissed. For reasons that follow, Plaintiff's claims for FMLA interference and violation of the Rehabilitation Act will be dismissed.

### 1.  Plaintiff's Claim Against BCCP for FMLA Interference Will Be Dismissed

In Count II of the SAC, Plaintiff alleges that BCCP interfered with her right to take FMLA leave.  Under the FMLA, an employee may take twelve weeks of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D).  This is known as the "self-care" provision of the FMLA. [4]  It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the right to take unpaid leave.  Id. at § 2615(a)(1).  A claim for interference with the right to take FMLA leave is often referred to as an "FMLA interference" claim.

The FMLA allows suits to be brought against defendant employers that are subject to the FMLA requirements.  "Employer" is defined in the FMLA to include "any person acting, directly

---

[4] Self-care refers to leave that is taken to take care for oneself, rather than leave taken to care for a sick family member.

or indirectly, in the interest of a covered employer, and a public agency." 29 C.F.R. § 825.104(a). The parties do not contest that BCCP is a public entity that employed Plaintiff during all relevant times. Therefore, BCCP qualifies as Plaintiff's employer for purposes of the FMLA.

As an initial matter, Plaintiff does not allege sufficient facts to show interference with her rights under the FMLA. BCCP, however, does not raise this as a defense in its Motion to Dismiss. Rather, BCCP asserts that the FMLA interference claim should be dismissed because BCCP is immune from liability as a state entity under the Eleventh Amendment. Plaintiff's failure to allege sufficient facts to establish a claim for FMLA interference will be discussed in detail infra in this Opinion.

With respect to sovereign immunity, the parties agree that BCCP is a state entity. (Doc. Nos. 40 at ¶ 3; 44 at 12-13.) Plaintiff, contends, however, that the Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7, applies to BCCP and abrogates its immunity. Plaintiff alleges that the Civil Rights Remedies Equalization Act applies because BCCP receives federal funding.[5] As a result, Plaintiff argues that BCCP should be liable for interference under the FMLA.

As a state entity, BCCP is generally immune from being sued for damages in federal courts. Lombardo v. Pennsylvania, Dep't of Pub. Welfare, 540 F.3d 190, 194-95 (3d Cir. 2008). "The Third Circuit has expressly held that Pennsylvania's courts are entitled to Eleventh Amendment immunity . . . ." Walthour v. Herron, No. 11-1690, 2011 WL 1325981, *3 (E.D. Pa. Apr. 7, 2011) (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 239-40 (3d Cir. 2005); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981)). However, two exceptions exist to sovereign immunity, and the parties contest the application of the second exception to this case.

---

[5] In the SAC, Plaintiff alleges that BCCP receives federal funding. (Doc. No. 40 at ¶ 122.) However, Plaintiff does not provide any factual foundation for this assertion.

The first exception occurs when Congress explicitly abrogates a state's immunity by statute. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). The second exception occurs when a state waives its sovereign immunity by consenting to suit. Id. The test for whether a state has waived sovereign immunity is stringent. Sossamon v. Texas, 131 S. Ct. 1651, 1658 (2011). Waiver will not be implied, and a court must "indulge every reasonable presumption against waiver." College Sav. Bank, 527 U.S. at 682.

Here, Plaintiff contends that the second exception to sovereign immunity applies. Specifically, Plaintiff argues that BCCP has waived sovereign immunity by consenting to suit pursuant to the Civil Rights Remedies Equalization Act, 42 U.S.C. 2000d-7. The Civil Rights Remedies Equalization Act provides:

> A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7 (emphasis added). According to Plaintiff, the phrase "or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance," applies to the self-care provision of the FMLA because it is a federal statute that prohibits discrimination. Moreover, Plaintiff argues that because BCCP receives federal funding, this triggers the application of this catchall provision. Thus, according to Plaintiff, the catchall phrase of the Civil Rights Remedies Equalization Act results in BCCP's waiver of sovereign immunity for purposes of liability under the FMLA.

This argument is unavailing.  In <u>Coleman v. Court of Appeals of Maryland</u>, the Supreme Court held that "the self-care provision [of the FMLA] is not a valid abrogation of states' immunity from suit."  132 S. Ct. 1327, 1334 (2012) (plurality opinion).  Specifically, the Court held that suits against states for violations of the FMLA's self-care provision, 29 U.S.C. § 2612(a)(1)(D), are barred by state immunity under the Eleventh Amendment.  <u>Id.</u> at 1332.  In reaching this decision, the Court agreed with each Court of Appeals that had previously addressed the question.  <u>Id.</u> (collecting cases).  <u>See also</u> <u>Banks v. Court of Common Pleas FJD</u>, 342 F. App'x 818, 821 (3d Cir. 2009) ("[P]rivate suits for damages may not be brought against states for alleged violations of the FMLA, which arise under the Act's self-care provision."); <u>Howard v. Pennsylvania Dep't of Pub. Welfare</u>, No. 11-1938, 2013 WL 102662 (E.D. Pa. Jan. 9, 2013) (granting summary judgment in favor of state employer on FMLA claim because suit for an alleged violation of self-care provision was barred); <u>Folk v. Pennsylvania Dep't of Educ.</u>, No. 10-7377, 2012 WL 2282849 (E.D. Pa. June 14, 2012) (same).

Plaintiff contends that <u>Coleman</u> does not control because the Court did not address the specific issue of whether sovereign immunity is waived under the catchall phrase of the Civil Rights Remedies Equalization Act, which provides as follows:

> . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7.  While it is true that <u>Coleman</u> did not address this specific scenario, the Supreme Court considered a similar issue in <u>Sossamon v. Texas</u>, 131 S. Ct. 1651 (2011).  There, the Court examined whether by accepting federal funds, a state consents to waive sovereign immunity for suits under a different federal statute that was at issue.[6]  The Court held that

---

[6] The statute at issue in <u>Coleman</u> was the Religious Land Use and Institutionalized Persons Act of 2000.

because the contested provision of that statute does not explicitly prohibit discrimination, the state did not waive its immunity by accepting federal funds under the catchall provision of the Civil Rights Remedies Equalization Act.

The same reasoning applies here.  Like the statute considered in <u>Sossamon</u>, the FMLA self-care provision also does not explicitly prohibit discrimination.  Instead, the self-care provision simply permits an eligible employee to take FMLA leave due to a serious health condition that renders the employee unable to work.  29 U.S.C. § 2612(a)(1)(D).  As the Supreme Court stated in <u>Coleman</u>:

> Without widespread evidence of sex discrimination or sex stereotyping in the administration of sick leave, it is apparent that the congressional purpose in enacting the self-care provision is unrelated to these supposed wrongs.  The legislative history of the self-care provision reveals a concern for the economic burdens on the employee and the employee's family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex.  See, e.g., S. Rep. No. 103-3, pp. 11-12 (1993), 1993 U.S.C.C.A.N. 3, 11-12; H.R. Rep., at 23.

<u>Coleman</u> 132 S. Ct. at 1335.  Like the statute at issue in <u>Sossaman</u>, the FMLA self-care provision is not a federal statute prohibiting discrimination as contemplated by the catchall provision of the Civil Rights Remedies Equalization Act.  Accordingly, even if BCCP receives federal funding, the catchall provision of Civil Rights Remedies Equalization Act does not apply and does not result in a waiver of its sovereign immunity.

Strictly construing the self-care provision of the FMLA in favor of the sovereign, BCCP is immune from suit for allegedly interfering with Plaintiff's right to FMLA leave.  Therefore, Plaintiff's interference claim under the FMLA against BCCP will be dismissed.[7]

---

[7] As stated above, BCCP does not address Plaintiff's claim for FMLA retaliation in its Motion to Dismiss.  Instead, BCCP only analyzes sovereign immunity with respect to the FMLA's self-care provision, codified in 29 U.S.C. § 2612(a)(1)(D).  The above analysis applies to this

2.  **Plaintiff's Claim Against BCCP Under the Rehabilitation Act Will Be Dismissed**

In Count III of the SAC, Plaintiff alleges that BCCP violated the Rehabilitation Act by:
(1) terminating Plaintiff based on her disability and her request for accommodation; and (2)
refusing to engage in an interactive process to find a reasonable accommodation for her
disability.  (Doc. No. 40 at ¶¶ 127-28.)  BCCP makes four arguments why Count III should be
dismissed.  First, Plaintiff's claim is time barred since it was made more than two years after her
request for accommodation.  Next, Plaintiff fails to establish that she is disabled under the
Rehabilitation Act.  Third, Plaintiff fails to allege that she was terminated because of her
disability.  Finally, Plaintiff's request for a new supervisor did not constitute a reasonable
accommodation request.  The Court will discuss each argument seriatim.

a.  **Plaintiff's Rehabilitation Act Claim is Time Barred**

In Pennsylvania, there is a two-year statute of limitations for claims under the
Rehabilitation Act, codified in 42 P.a.C.S. § 5524.  Swierkowski v. Consolidated Rail Corp., 168
F. Supp.2d 389, 393-394 (E.D. Pa. 2001) (applying Pennsylvania's two-year statute of
limitations to a claim arising under the Rehabilitation Act).  A federal discrimination claim
accrues, and the applicable statute of limitations begins to run, when the plaintiff knows or has
reason to know of the injury that is the basis of the action.  Toney v. U.S. Healthcare, 840
F.Supp. 357, 359 (E.D. Pa. 1993).  Put another way, the statute of limitations period begins to
run once the injured party knows, or a reasonable person should know, that the defendant has
committed the harmful act.  Zied v. Barnhart, 418 Fed. Appx. 109, 113 (3d Cir. 2011).
"Although the statute of limitations is an affirmative defense, it may be raised in a motion to

---

provision.  Because BCCP fails to argue that Plaintiff's retaliation claim is barred under the
Eleventh Amendment, that claim will not be dismissed.

dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings." Datto v. Harrison, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009). The parties agree that a two-year statute of limitations applies to Plaintiff's Rehabilitation Act claim, but they disagree about when it started to run. (Doc. Nos. 44 at 6; 54 at 7.)

Here, Plaintiff's claim under the Rehabilitation Act is time barred. As stated above, Pennsylvania has a two-year statute of limitations for claims under the Rehabilitation Act. Plaintiff bases her claim under the Rehabilitation Act on BCCP's denial of her request for accommodation and refusal to engage in an interactive process following her request. (Doc. No. 40 at ¶¶ 127-28.) Thus, the denial of her request for accommodation constitutes the harmful act that triggers the statute of limitations. According to Plaintiff, she made her request for accommodation prior to returning to work. (Id. at ¶ 42.) As she states in the SAC:

> Prior to her return to work, on September 16, 2010, Plaintiff (through her legal counsel) requested a reasonable accommodation for her major depression and anxiety (specifically reassignment to a different supervisor). This request was denied.

(Doc. No. 40 at ¶ 42.) While it is unclear whether Plaintiff requested an accommodation on September 16, 2010 or returned to work on that date, the SAC states that Plaintiff received a new caseload in November 2010. Thus, the Court infers that Plaintiff returned to work by November 2010.[8] (Id. at ¶ 73.) Construing the facts in the light most favorable to Plaintiff, the latest she could have requested an accommodation is November 2010. Plaintiff commenced this action on February 7, 2013. (Doc. No. 1.) Because the harm that Plaintiff alleges under the Rehabilitation Act — namely, the denial of her request for accommodation — occurred more than two years before Plaintiff filed her Complaint, her claim under the Rehabilitation Act is time barred.

---

[8] Plaintiff's previous two Complaints allege that she returned to work on October 1, 2010. (See Doc. Nos. 1 at ¶ 19; 21 at ¶ 19.) This date is not included in the SAC.

**b.  Plaintiff Fails to Establish that She is Disabled Under the Rehabilitation Act**

Assuming arguendo that Plaintiff's claim under the Rehabilitation Act is not time barred, Plaintiff fails to establish that she is disabled under the Act.  The Rehabilitation Act "forbids [federal] employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).[9]  "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show: '(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.'"  Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007) (quoting Shiring, 90 F.3d at 829).

The first prong of the prima facie case requires Plaintiff to demonstrate that she is disabled.  A plaintiff qualifies as disabled if she: "(1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  Keyes v. Catholic Charities of the Archdiocese of Philadelphia, 415 Fed. App'x 405, 409 (3d Cir. 2011) (citing 42 U.S.C. § 12102(1)).

Plaintiff fails to establish that she is disabled under the Rehabilitation Act.  In the SAC, Plaintiff alleges that she suffers from "Inattentive [sic] Attention Deficit Hyperactivity Disorder ("ADHD")," and that she told BCCP about this condition in 2010.  (Doc. No. 40 at ¶ 15-16.) Plaintiff then alleges that she was approved to take FMLA leave due to a "serious medical

---

[9] The standards under the Rehabilitation Act are the same standards that are applied under the Americans with Disabilities Act ("ADA").  Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

condition," but does not specify the nature of that condition.  (Id. at ¶ 37.)  Finally, Plaintiff alleges that prior to her return to work, she requested an accommodation for "major depression and anxiety," and her request was denied.  (Id. at ¶ 42.)

Accepting these allegations as true, they are insufficient to demonstrate that Plaintiff is disabled for purposes of the Rehabilitation Act, which requires a substantial limitation on one or more major life activities.  First, Plaintiff does not explain which condition, or combination of conditions, renders her disabled — her ADHD, her "serious medical condition," or her "major depression and anxiety."  Although Plaintiff alleges that she made BCCP aware of these conditions, she fails to set forth any facts to demonstrate that BCCP even regarded her as disabled as a result.  Simply alleging that an employer knew about a disability is not sufficient to demonstrate that the employer regarded the employee as disabled.  See Keyes, 415 F. App'x at 410; Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996).  Plaintiff also fails to allege any facts that demonstrate that these conditions substantially limited a major life activity, or that she has a record of such impairments.  Instead, Plaintiff merely makes a threadbare recital of the legal standard.  As such, her claim under the Rehabilitation Act fails.

### c.  Plaintiff Fails to Establish that She Was Terminated Due to her Disability

Plaintiff also does not allege facts that demonstrate that BCCP terminated her due to her disability, as required under the Rehabilitation Act.  As stated above, the third prong that Plaintiff must establish for a prima facie case of discrimination under the Rehabilitation Act is that she was terminated as a result of her disability.

Here, rather than asserting a connection between her disability and her termination, Plaintiff repeatedly asserts that the adverse actions taken against her were due to her FMLA leave.  For example, Plaintiff alleges that "other hearing officers who took FMLA leave were

given at least thirty ("30") days to ease back into their positions as a matter of policy and/or practice." (Doc. No. 40 at ¶ 44.) She also states that BCCP "began to 'pile up' work" on her almost immediately after her return from FMLA leave, and she was subjected to more scrutiny than other hearing officers "because she engaged in protected activities." (Id. at ¶¶ 47,72.) Finally, she alleges that "bogus" performance evaluations culminated with her termination in May 2011. (Id. at ¶ 78.) None of these facts connect her termination to any of the conditions alleged in the SAC, even if she were to be considered disabled.

### d. Plaintiff's Request for a New Supervisor Was Not a Reasonable Accommodation Request

In addition, the request that Plaintiff made for a new supervisor did not constitute a reasonable accommodation request under the Rehabilitation Act. Under the Act, employers are required to make "reasonable accommodations" for disabled employee's limitations. Fowler v. UPMC Shadyside, 578 F.3d 203, 208 (3d Cir. 2009). A plaintiff must make a prima facie showing that a reasonable accommodation is possible, which then shifts the burden to the defendant to prove that the accommodation requested was unreasonable or would have caused an undue hardship on the employer. Shiring, 90 F.3d at 831.

Here, the accommodation requested by Plaintiff for her depression and anxiety was to be reassigned to a different supervisor. The Third Circuit has held that the Rehabilitation Act does not require employers to accommodate employees by transferring them to another supervisor. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998); Ozlek v. Potter, 259 Fed. Appx. 417, 420 (3d Cir. 2007). Moreover, by enacting the Rehabilitation Act, Congress did not intend to interfere with personnel decisions within an organizational hierarchy. Id. (citing Gaul, 134 F.3d at 581.) As such, Plaintiff's request to be reassigned to a different supervisor did not

constitute a reasonable request for accommodation.  Therefore, BCCP's denial of that request does not give rise to a claim under the Rehabilitation Act.

For the forgoing reasons, Plaintiff's claim against BCCP under the Rehabilitation Act will be dismissed.

### B.  Plaintiff's Claims Against Bucks County

Plaintiff alleges the following claims against Bucks County:  (1) FMLA interference (Count II); (2) FMLA retaliation (Count II); and (3) violation of her rights under the Rehabilitation Act (Count III).  For reasons that follow, Plaintiff's claims for FMLA interference and violation of her rights under the Rehabilitation Act will be dismissed.  Plaintiff's claim for FMLA retaliation will proceed.

### 1.  Plaintiff Establishes that Bucks County and BCCP Were Joint Employers for Purposes of the FMLA

Defendant Bucks County argues that Plaintiff's claim under the FMLA fails because Bucks County is not Plaintiff's employer for purposes of the FMLA.  In order for Bucks County to be named as a defendant in this case, Plaintiff must establish that Bucks County employed her together with BCCP.  This is because FMLA liability requires a showing that a defendant is an employer subject to the requirements of the statute.  Parker v. Hanhemann Univ. Hosp., 234 F.Supp.2d 478, 483 (D.N. J. 2002).  The FMLA defines "employer" to include "any person acting, directly or indirectly, in the interest of a covered employer, and a public agency."  29 C.F.R. § 825.104(a).  While it is clear that Plaintiff worked for BCCP, the question then becomes whether Bucks County, as a public agency, was a joint employer along with BCCP for purposes of FMLA liability.

The joint employment inquiry presents a question that should be analyzed in light of the totality of the factual evidence.  See NLRB v. Browning-Ferris Indus., 961 F.2d 1117, 1121 (3d

17

Cir. 1982).  Relevant considerations include whether the defendant has the ability to fire the employee, control the employee's schedule, determine the employee's compensation rate, or maintain employment records.  Carstetter v. Adams Cnty. Transit Auth., No. 06-1993, 2008 WL 2704596, *9 (M.D. Pa. July 8, 2008) (citing 29 C.F.R. § 825.106(c)).

Here, Plaintiff alleges that Bucks County and BCCP were joint employers for purposes of the FMLA.  Plaintiff states that Bucks County and BCCP:  (1) shared centralized control of labor relations as regard Plaintiff's employment (Doc. No. 40 at ¶ 81.); (2) were instrumental in the decision to terminate Plaintiff's employment (Id. at ¶ 82.); (3) engaged in interrelation of operations as regards Plaintiff's employment in the Domestic Relations Section (Id. at ¶ 83.); and (4) engaged in common management of Plaintiff in the Domestic Relations Section (Id. at ¶ 84.). Further, Plaintiff reported directly to the Human Resources Department for Bucks County, and Bucks County listed all of Plaintiff's job requirements and determined her rate of pay, benefits, and method of compensation.  (Id. at ¶¶ 87-89.)  Bucks County maintained all official employee files and dealt with all discriminatory actions involving Plaintiff.  (Id. at ¶¶ 90-91.)  Bucks County also exercised control over maintenance for the Domestic Relations office, including housekeeping staff, and Domestic Relations employees were required to fill out Bucks County incident reports if they were hurt during business hours.  (Id. at ¶¶ 92-94.)

Considering the totality of the factual evidence as stated above and alleged in the SAC, Plaintiff establishes that BCCP and Bucks County are joint employers for purposes the FMLA.

### 2. Plaintiff's Claim Against Bucks County for FMLA Interference Will Be Dismissed

Plaintiff is unable to establish, however, a claim for FMLA interference against Bucks County, or, as discussed below, either of the individual Defendants.  To prove an FMLA interference claim, an employee must demonstrate that she was: (1) entitled to benefits under the

FMLA; and (2) denied those benefits.  Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa.

2009) (citing Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).  "An

interference claim is not about discrimination, it is only about whether the employer provided the

employee with the entitlements guaranteed by the FMLA."  Callison v. City of Philadelphia, 430

F. 3d 117, 119 (3d Cir. 2005).

Here, Plaintiff was approved for "intermittent FMLA leave as a result of a serious

medical condition."  (Doc. No. 40 at ¶ 37.)  Around April 2010, Plaintiff took full-time FMLA

leave.  (Id. at ¶ 38.)  By taking FMLA leave, Plaintiff clearly received the benefit to which she

was entitled.  Accordingly, Plaintiff cannot establish that she was denied benefits under the

FMLA.  While Plaintiff alleges that she received unfair treatment and was possibly terminated as

a result of her FMLA leave, these allegations amount to a claim for retaliation under the FMLA,

rather than interference.  Thus, her claim for interference under the FMLA fails.

### 3.  Plaintiff's Claim Against Bucks County for FMLA Retaliation Will Not Be Dismissed

Defendant Bucks County moves to dismiss Plaintiff's claim for retaliation under the

FMLA.  Bucks County argues that Plaintiff fails to set forth facts to demonstrate an adverse

employment action that was caused by her FMLA leave.  The Court disagrees and will allow the

claim to proceed.

As stated above, Plaintiff has alleged sufficient facts to establish that BBCP and Bucks

County were her joint employers for purposes of FMLA liability.  It follows then that in order to

prove an FMLA retaliation claim, an employee must show that her employer intentionally

discriminated against her for exercising an FMLA right.  Mascioli v. Arby's Restaurant Group,

Inc., 610 F.Supp.2d 419, 431, 433 (W.D. Pa. 2009).  The Court must analyze this claim pursuant

to the burden-shifting analysis adopted by the Supreme Court in McDonnell Douglas v. Green,

411 U.S. 792 (1973).  Under this analysis, a plaintiff must first establish a prima facie case of

FMLA retaliation by demonstrating that:  (1) she took FMLA leave; (2) she suffered an adverse

employment action; and (3) there was a causal connection between her leave and the adverse

action.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).

Defendant Bucks County does not dispute the first two elements of the prima facie case.

Plaintiff received approval for FMLA leave in January 2010, and took full-time FMLA leave in

April 2010.  (Doc. No. 40 at ¶¶ 37-38.)  Plaintiff pleads sufficient facts to show that she was

retaliated against when she returned to work after her FMLA leave, which culminated in her

termination.  Defendant Bucks County disputes the causal connection between Plaintiff's FMLA

leave and the subsequent adverse employment actions.

The Third Circuit has explained that two main factors are relevant in deciding whether

there was a causal link between the FMLA leave and the adverse employment action:  (1) timing;

or (2) evidence of ongoing antagonism.  Abramson v. William Paterson Coll. of N.J., 260 F.3d

265, 288 (3d Cir. 2001).  Plaintiff has alleged sufficient evidence of ongoing antagonism that

occurred after she returned from leave.  Plaintiff claims that upon her return to work she was

scrutinized regularly and subjected to unwarranted criticism and discipline.  (Doc. No. 40 at ¶¶

43, 61, 63, 66, 69.)  She states that she was assigned a new caseload in an effort to set her up for

bogus performance evaluations, which created a bogus paper trail leading to her termination in

May 2011.  (Id. at ¶¶ 73, 78.)  This occurred after Plaintiff returned to work sometime in the fall

of 2010.  (Id.)  This evidence also supports the timing element to establish the causal link.  The

temporal proximity is sufficient to establish a causal link between the FMLA leave and the

adverse employment actions.  See Abramson, 260 F.3d at 288 ("Temporal proximity . . . is

sufficient to establish the causal link.  [A] plaintiff can [also] establish a link between his or her

protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period"). Because Plaintiff has pled facts sufficient to establish a pattern of antagonism and temporal proximity between the time that she returned from leave and her termination, her claim for FMLA retaliation will proceed.

**4. Plaintiff's Claim Under the Rehabilitation Act Against Bucks County Will Be Dismissed[10]**

In Count III of the SAC, Plaintiff alleges that Bucks County violated her rights under the Rehabilitation Act by: (1) terminating Plaintiff because of her disability and request for accommodation; and (2) refusing to engage in an interactive process to find a reasonable accommodation for her disability. (Doc. No. 40 at ¶¶ 127-28.) Defendant Bucks County argues that this claim should be dismissed for three reasons. First, Plaintiff fails to establish that she is disabled under the applicable definition in the Rehabilitation Act. Second, Plaintiff fails to set forth facts to demonstrate that she made a reasonable request for accommodation for a disability. Third, Plaintiff does not connect her termination to an alleged disability. Finally, Plaintiff's claim under the Rehabilitation Act is untimely.

The Court will dismiss Plaintiff's claim against Bucks County under the Rehabilitation Act for the same reasons it will dismiss her Rehabilitation Act claim against BCCP. This is discussed in detail supra in Section IV(A)(2)(a) – (d). In summary, Plaintiff has not alleged that she is disabled for purposes of the Rehabilitation Act. Moreover, even if she is disabled, Plaintiff does not allege sufficient facts to show that she was terminated because of that disability. Further, Plaintiff does not establish that she made a reasonable request for accommodation for a

---

[10] At the hearing on the Motions to Dismiss on July 2, 2013, counsel for Plaintiff stated that the claim against individual Defendants Filipovits and LoBianco for violation of the PHRA would be dismissed. However, Plaintiff included this claim in Count V of the SAC.

disability by asking for a new supervisor.  Finally, as discussed above, Plaintiff's claim under the Rehabilitation Act is time barred.

### C.  Plaintiff's Claims Against Individual Defendants Filipovits and LoBianco

Plaintiff alleges the following claims against individual Defendants Filipovits and LoBianco: (1) FMLA interference (Count I); (2) FMLA retaliation (Count I); (3) violation of her equal protection rights under 42 U.S.C. § 1983 (Count IV); (4) violation of the Pennsylvania Human Relations Act (Count V); and intentional infliction of emotional distress under Pennsylvania law (Count VI).

### 1.  Plaintiff's Claim for FMLA Interference Against Individual Defendants Filipovits and LoBianco Will Be Dismissed

Plaintiff's claim for FMLA interference against individual Defendants Filipovits and LoBianco will be dismissed for the same reasons it will be dismissed against Bucks County. This is discussed supra in Section (IV)(B)(2).  Again, Plaintiff took full-time FMLA leave around April 2010.  (Doc. No. 40 at ¶ 38.)  Accordingly, she cannot establish that the individual Defendants interfered with her receipt of benefits under the FMLA.  By taking FMLA leave, Plaintiff received the benefit to which she was entitled under the FMLA.  Thus, her claim for interference under the FMLA fails.

### 2.  Plaintiff's Claim for FMLA Retaliation Against Individual Defendants Filipovits and LoBianco Will Not Be Dismissed

As discussed in Section IV(B)(3), Plaintiff has pled sufficient facts to show retaliation after she returned to work from her FMLA leave.  Moreover, the Third Circuit has held that an individual supervisor at a public agency may be liable as an employer under the FMLA. Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 413, 416 (3d Cir. 2012). Defendants Filipovits and LoBianco served as Plaintiff's supervisors before and after she

returned from FMLA leave.  As such, Plaintiff's claim for FMLA retaliation may proceed against them.

### 3.  Plaintiff's Claim for Violation of Her Equal Protection Rights Against Individual Defendants Filipovits and LoBianco Will Be Dismissed

Plaintiff alleges a claim against Defendants Filipovits and LoBianco for violation of her equal protection rights under 42 U.S.C. § 1983.  Defendants submit that Plaintiff fails to allege treatment resulting in a deprivation of a constitutional right.  Defendants also submit, in the alternative, that they are entitled to qualified immunity from this claim.

To state an equal protection cause of action under § 1983, a plaintiff must establish that: (1) she is a member of a protected class; and (2) she received different treatment than that received by other similarly situated individuals.  Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).  The Supreme Court has held that the equal protection clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently.  Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605 (2008).  The Supreme Court has also recognized that an individual, or "class of one," may be entitled to protection if he or she is being unreasonably singled out, but foreclosed this theory in the public employment context.  Engquist, 553 U.S. at 603 (holding that recognition of a class of one theory of equal protection in the public employment context is contrary to the concept of at-will employment).

Plaintiff states that she is not alleging an equal protected claim based on a "class of one" theory.  (Doc. No. 40 at ¶ 131.)  Rather, she says that the actions of Defendants LoBianco and Filipovits were "class-based decisions in the employment context in that they treated hearing officers categorically differently (i.e. some were permitted time to ease back into work after FMLA leave wherein others were not)."  (Id.)  Specifically, Plaintiff states that other hearing

officers were permitted to "ease back" into their positions after returning from leave.  (Doc. No. 40 at ¶ 44.)  She also asserts that she was scrutinized regularly and subjected to bogus performance evaluations, while other hearing officers were not.  (Id. at ¶¶ 50-73.)  These facts are insufficient to allege a class-based equal protection claim.

For example, in Graham v. Hoffer, the court examined a similar set of facts and found them insufficient to establish this type of class-based equal protection claim.  No. 05-2679, 2008 WL 4570667 (M.D. Pa. Oct. 10, 2008).  There, the plaintiff alleged that he was treated differently from all other employees.  Graham, 2008 WL 4570667 at *6.  Specifically, he was not allowed to enter the Courthouse without undergoing security screening, which other employees were not required to do.  The court held that this does not amount to an allegation that the defendants treated a distinct group of individuals categorically differently, but rather constituted a class-of-one theory for which relief is not available.  Id.

Similarly, Plaintiff fails to allege the disparate treatment of a group of individuals that constitutes a class.  Instead, Plaintiff alleges that she was treated differently than other hearing officers who were similarly situated.  This amounts to a class-of-one assertion, rather than a class-based allegation.  As stated above, the Supreme Court has barred equal protection claims based on a class-of-one theory in the public employment context.  Thus, Plaintiff's equal protection claim fails as a matter of law.[11]

---

[11]Defendants also argue that they are entitled to qualified immunity on the equal protection claim.  Because Plaintiff's equal protection claim fails as a matter of law, the Court need not address the application of qualified immunity to this claim.

**4.   Plaintiff's Claim for Violation of the PHRA Against Individual Defendants Filipovits and LoBianco Will Not Be Dismissed**

Plaintiff contends that Defendants Filipovits and LoBianco violated her rights under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.  The PHRA forbids "[a]ny person, employer, employment agency, labor organization or employee, to aid, abet, incite compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . ."  43 Pa. Cons. Stat. Ann. § 955(e).  Both individual Defendants qualify as "persons" and "employees" under 955(e).

Coverage of individuals with disabilities under the PHRA is generally considered "co-extensive" with the Federal discrimination laws, namely the Americans with Disabilities Act and the Rehabilitation Act in particular.  See, e.g., Kaniuka v. Good Shepherd Home, No. 05-2917, 2006 WL 2380387, *n. 3 (E.D. Pa. Aug. 15, 2006) ("[t]he PHRA is generally applied in conformance with the ADA, and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts. . .') (citations omitted); Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012) (citations omitted) (the PHRA and the Rehabilitation Act are interpreted consistently and have the same standard for determination of liability.)  Therefore, the Court's analysis of Plaintiff's claims under the Rehabilitation Act infra applies equally well to her claim under the PHRA.

Plaintiff alleges that individual Defendants Filipovits and LoBianco "discriminated against her due to her disability, her engagement in a protected activity (FMLA), and her counseled request for an accommodation."  (Doc. No. 57 at 12.)  With respect to both her disability and accommodation request, these assertions fail for the same reasons as her claim under the Rehabilitation Act.  As stated in Section IV(A)(2)(b), Plaintiff fails to establish that she is disabled.  Moreover, her request for a new supervisor did not constitute a reasonable

25

accommodation request.  Therefore, to the extent that Plaintiff's PHRA claim is based on these assertions, the claim will be dismissed.[12]

To proceed on a retaliation claim under the PHRA, Plaintiff must establish a prima facie case that: (1) she was engaged in protected activity; (2) she was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (citations omitted).  Under Pennsylvania law, request for leave under the FMLA constitutes protected activity within the meaning of the PHRA.  Erdman v. Nationwide Ins. Co., 510 F.Supp.2d 363, 375 (M.D. Pa. 2007).

As discussed, Plaintiff has pled sufficient facts to show retaliation after she returned to work from her FMLA leave.  Because the PHRA and the Rehabilitation Act are interpreted consistently under the same standard of liability, Plaintiff's claim for retaliation under the PHRA will also proceed.  As Plaintiff's supervisors both before and after she returned to work, Defendants Filipovits and LoBianco may be liable for this retaliation under the PHRA. Therefore, Plaintiff's claim for retaliation under the PHRA  against individual Defendants Filipovits and LoBianco will not be dismissed.

### 5. Plaintiff's Claim for Intentional Infliction of Emotional Distress Under Pennsylvania Law Against Individual Defendants Filipovits and LoBianco Will Be Dismissed

In Count VI, Plaintiff asserts a claim for intentional infliction of emotional distress under Pennsylvania law against Defendants Filipovits and LoBianco.  (Doc. No. 40 at ¶¶ 145-48.)

---

[12] Defendants also contend that Plaintiff's PHRA claim should be dismissed because this Court lacks jurisdiction over Plaintiff's state law claims.  Because Plaintiff's claim for retaliation under the FMLA will proceed against Defendants Filipovits and LoBianco, the Court has supplemental jurisdiction over Plaintiff's state law claims.  De Ansencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (citations and quotations omitted).

Defendants submit that this claim should be dismissed for the following three reasons: (1) this Court lacks subject matter jurisdiction to decide the claim; (2) the Pennsylvania Worker's Compensation Act ("WCA") bars recovery; and (3) Plaintiff fails to allege extreme and outrageous conduct.

For a plaintiff to recover on an intentional infliction of emotional distress claim, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Imboden v. Chowns Communications, 182 F.Supp.2d 453, 457 (E.D. Pa. 2002) (citations omitted). "At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will give rise to the level of outrageousness necessary to provide a basis for recovery of the tort of intentional infliction of emotional distress." Id.

Most importantly, the WCA provides an exclusive remedy for work related injuries. 77 Pa. Stat. § 481(a). "The exclusivity provision of [the WCA] statute bars claims for 'intentional and/or negligent infliction of emotional distress [arising] out of [an] employment relationship." Hancuff v. Prism Technologies and Assemblies, LLC, 357 F.Supp.2d 828, (W.D. Pa. 2005) (citing Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997)). "Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." Imboden, 182 F.Supp.2d at 457 (citing Cox, 861 F.2d at 395). "The extra factor that is generally required is retaliation for turning down sexual propositions." Id. (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990)). "[O]ffensive comments and gestures in the workplace, even though sexually explicit, are not enough to satisfy the Andrews extra requirement of sexual propositions." Id. (citing

27

<u>Wasserman v. Potamkin Toyota, Inc.</u>, No. 98-0792, 1998 WL 744090, *3 (E.D. Pa. Oct. 23, 1998)).

      As explained above, the WCA will bar Plaintiff's claim for intentional infliction of emotional distress in the employment context, unless she is able to establish outrageous conduct. This outrageous conduct must consist of both sexual harassment and retaliatory behavior for turning down sexual propositions.  Here, Plaintiff states that in late 2007, Defendant Filipovits physically smacked her on the buttocks, which she labels as "the incident."  (Doc. No. 40 at ¶ 20.)  Because the incident was so loud, another employer overheard and told Plaintiff and Defendant Filipovits to "play nice."  (<u>Id.</u> at ¶¶ 21-22.)  Defendant LoBianco did not engage in sexual misconduct towards Plaintiff, but made Plaintiff write a letter about the incident, and both Defendants Filipovits and LoBianco held grudges against Plaintiff as a result of the incident.  (<u>Id.</u> at ¶¶ 29-31, 36.)

      As an initial matter, Plaintiff does not plead facts sufficient to allege sexual harassment against Defendant LoBianco.  Moreover, even if the incident with Defendant Filipovits constitutes sexual harassment, Plaintiff has not stated that Defendants retaliated against her because of that misconduct.  As stated above, Plaintiff must allege retaliation for turning down a sexual proposition in order to establish an intentional infliction of emotional distress claim against her employer that is not barred by the WCA.  Here, Plaintiff does not connect the sexual misconduct to the subsequent retaliation.  While she states that Defendant Filipovits sexually harassed her in late 2007, and that both Defendants Filipovits and LoBianco held a grudge against her after that incident, she does not state that either Defendant retaliated against her because of that misconduct.  Instead, she brings claims for retaliation for taking FMLA leave. Because Plaintiff fails to allege retaliation for turning down a sexual proposition, she is unable to

establish a claim for intentional infliction of emotional distress that is not barred by the WCA.

Thus, the WCA bars her claim and it will be dismissed.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff's claims for FMLA interference and violation of the Rehabilitation Act against each of the four Defendants will be dismissed.  Plaintiff's claims for violation of her equal protection rights and intentional infliction of emotional distress against individual Defendants Filipovits and LoBianco will also be dismissed.  Plaintiff's claims for FMLA retaliation against each of the four Defendants will proceed, and her claim for retaliation under the PHRA against individual Defendants Filipovits and LoBianco will also proceed.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STACY AMOROSO,

                    Plaintiff,

      v.

BUCKS COUNTY COURT OF COMMON
PLEAS, et al.,

                    Defendants.

CIVIL ACTION
NO. 13-0689

## <u>ORDER</u>

**AND NOW**, this 27th day of March 2014, upon consideration of Defendant BCCP's Motion to Dismiss (Doc. No. 44), Plaintiff's Response (Doc. No. 54), BCCP's Reply (Doc. No. 55), Defendants Filipovits and LoBianco's Motion to Dismiss (Doc. No. 48), Plaintiff's Response (Doc. No. 57), Filipovits and LoBianco's Reply (Doc. No. 58), Defendant Bucks County's Motion to Dismiss (Doc. No. 49), and Plaintiff's Response (Doc. No. 56), it is

**ORDERED** that Defendant BCCP's Motion to Dismiss (Doc. No. 44), Defendants Filipovits and LoBianco's Motion to Dismiss (Doc. No. 48), and Defendant Bucks County's Motion to Dismiss (Doc. No. 49) are **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's FMLA interference claim against Defendants Filipovits and LoBianco as alleged in Count I is **DISMISSED**.

2. Plaintiff's FMLA retaliation claim against Defendants Filipovits and LoBianco as alleged in Count I will not be dismissed and will proceed to discovery.

3. Plaintiff's FMLA interference claim against Defendants BCCP and Bucks County as alleged in Count II is **DISMISSED**.

4.  Plaintiff's FMLA retaliation claim against Defendants BCCP and Bucks County as alleged in Count II will not be dismissed and will proceed to discovery.

5.  Plaintiff's Rehabilitation Act claim against Defendants BCCP and Bucks County as alleged in Count III is **DISMISSED**.

6.  Plaintiff's equal protection claim against Defendants Filipovits and LoBianco as alleged in Count IV is **DISMISSED**.

7.  Plaintiff's PHRA claim against Defendants Filipovits and LoBianco as alleged in Count V will not be dismissed and will proceed to discovery.

8.  Plaintiff's intentional infliction of emotional distress against Defendants Filipovits and LoBianco as alleged in Count VI is **DISMISSED**.

9.  Defendants are directed to file an Answer to the remaining claims in Counts I, II, and V within twenty days from the date of this Order.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

31